UNITED STATES, Appellee

v.

**Bondee WRIGHT, Jr., Airman Basic U.S. Air Force, Appellant.**

No. 94–0209.
CMR No. 29785.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 16, 1995.

Decided Aug. 23, 1995.

For Appellant: *Morgan E. Welch* (argued); *Captain Robert I. Smith* (on brief); *Colonel Jay L. Cohen.*

For Appellee: *Major John H. Kongable* (argued); *Colonel Jeffery T. Infelise* and *Captain Jane M.E. Peterson* (on brief); *Colonel Thomas E. Schlegel.*

*Opinion of the Court*

GIERKE, Judge:

1. A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of rape and unlawful entry, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 USC §§ 920 and 934, respectively. The approved sentence provides for a dishonorable discharge, confinement for 5 years, and total forfeitures. The Court of Military Review * affirmed the findings and sentence in an unpublished opinion.

2. We granted review of the following issues:

I

WHETHER IT WAS ERROR TO THE SUBSTANTIAL PREJUDICE OF THE ACCUSED TO AFFIRM A CONVICTION IN LIGHT OF SUBSTANTIAL EVIDENCE OF INEFFECTIVE ASSISTANCE OF COUNSEL BY CONCLUDING THAT SEEMING FAILURES OF REPRESENTATION WERE "TACTICAL AND REASONABLE" WHEN

---

* *See* 41 MJ 213, 229 n. * (1994).

284

THOSE FAILURES INCLUDED THE FOLLOWING:

A. UNREFUTED EVIDENCE OF TRIAL COUNSEL'S [sic] FAILURE TO OBJECT OR OTHERWISE SEEK RELIEF FROM ADMISSION OF UNCORROBORATED HEARSAY TESTIMONY OF A NONPRESENT (THOUGH AVAILABLE) "EYEWITNESS" TO AN ALLEGED FORCIBLE RAPE WHEN NO OTHER SUCH TESTIMONY WAS PRESENTED AT TRIAL; THE VICTIM ADMITTED SHE WAS TOO INTOXICATED TO KNOW IF THE ACT OCCURRED OR NOT; IN LIGHT OF TRIAL COUNSEL'S [sic] ARGUMENT AND THE QUESTIONS OF MEMBERS IN DELIBERATION CENTERED ON ISSUES OF CONSENT AND MISTAKE OF FACT.

B. COUNSEL'S FAILURE TO SUBPOENA OR OTHERWISE PROVIDE FOR THE PRESENCE AT TRIAL OF THE CRITICAL WITNESS, JERRY GARDNER, AND TRIAL DEFENSE COUNSEL'S RELIANCE INSTEAD UPON PROSECUTION'S REPRESENTATIONS AT THE ARTICLE 32 INVESTIGATION THAT GARDNER WOULD APPEAR AND RELIANCE UPON THE PROSECUTION'S WITNESS LIST WHICH WAS INHERENTLY PREJUDICIAL.

II

WHETHER THE RULINGS OF THE TRIAL COURT AND THE AFFIRMANCE BY AFCMR CONSTITUTE A DENIAL OF THE CONSTITUTIONAL RIGHT OF CONFRONTATION BY APPELLANT OF HIS ACCUSER.

3. We hold that the Court of Military Review did not err by rejecting appellant's allegations of ineffective assistance of counsel. Our holding on this issue renders the second granted issue moot.

4. Appellant and another airman were in one of the base dormitories on the morning of May 4, 1991. A civilian, Mr. Gardner, came out of one of the dormitory rooms and asked appellant where he could obtain cigarettes and how to unlock the door so that it would not lock behind him. According to appellant's confession, Mr. Gardner bragged about his prowess with military women and showed appellant the female occupant of the room, Airman V, who was lying naked on the bed with a sheet covering her lower body. Airman V and Mr. Gardner had met earlier at the noncommissioned officers' club, returned to Airman V's dormitory room, and engaged in consensual sexual intercourse. Airman V had been taking medication and had been drinking heavily. At some point after returning to her room with Mr. Gardner, she lost consciousness.

5. After Mr. Gardner left the area to find cigarettes, appellant entered Airman V's room and had sexual intercourse with her. Appellant gave two statements to investigators. In the first, he said that Airman V consented to sexual intercourse with him. In the second statement, appellant said that Airman V was unconscious before and during intercourse, "but the thought never crossed my mind, I guess I was so excited." Airman V was able to remember having intercourse with Mr. Gardner but was unable to remember anything concerning appellant.

6. Mr. Gardner returned to the room while appellant was engaged in sexual intercourse with Airman V. He ran downstairs to the second floor dayroom, where Senior Airman Blackledge was writing a letter, and told Blackledge that "[a] girl is being raped up on the third floor." Mr. Gardner told Blackledge that there were "two guys ... and they are pretty big." Senior Airmen Blackledge and Johnson described Mr. Gardner as being "frantic," "excited," and "upset." Blackledge summoned Senior Airmen Knab and Johnson for assistance, "in case there was something very unexpected." Knab heard Mr. Gardner say that "a nigger was raping Airman [V]."

7. Mr. Gardner, as well as Senior Airmen Blackledge, Knab, and Johnson went to Air-

man V's dormitory room, and appellant fled. Appellant was later identified and questioned, resulting in his two statements described above.

8. Appellant was prosecuted for rape on the theory that Airman V was unconscious and incapable of consent. Defense counsel attacked Mr. Gardner's accusation of rape, arguing that "he got upset that somebody else was with his girl," and "[m]aybe he got upset that it was a black man with the girl that night."

9. Appellant now contends that his defense counsel was ineffective for failure to object to the hearsay testimony of the three airmen about Mr. Gardner's report of a rape in progress and for failure to compel the personal appearance of Mr. Gardner at trial.

10. In a post-trial affidavit, defense counsel states that he interviewed Mr. Gardner before trial and decided not to request him as a witness because he would harm appellant. Mr. Gardner told defense counsel that Airman V "passed out" while he was having sexual intercourse with her and that Airman V still "appeared" unconscious while appellant was having intercourse with her. Page 2.

11. Defense counsel explains that he did not object to the hearsay testimony of Senior Airmen Blackledge, Knab, and Johnson because he believed that Mr. Gardner's report of a rape in progress qualified as an excited utterance under Mil.R.Evid. 803(2), Manual for Courts–Martial, United States, 1984. Defense counsel explains further that he elicited Mr. Gardner's exact words, *i.e.,* "a nigger was raping Airman [V]," to show that appellant was accused of rape because he was black and Airman V was white. He explained that "the strategy was designed to show that Gardner, Knab, Johnson, and Blackledge could not believe Airman [V] would have consensual sexual intercourse with a black man and that Airman [V] was too embarrassed to admit that she consented." Page 1.

12. When evaluating defense counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable profes-

sional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) (citation omitted). The reasonableness of defense counsel's performance is measured by "prevailing professional norms." *Id.* at 688, 104 S.Ct. at 2065. To overcome the presumption of competence, an appellant must show (1) "that counsel's performance was deficient"; and (2) that the deficiency "prejudiced the defense." *Id.* at 687, 104 S.Ct. at 2064.

■ 13. We are satisfied that defense counsel was reasonable in concluding that Mr. Gardner's report of a rape in progress qualified as an excited utterance. *See David v. Pueblo Supermarket of St. Thomas,* 740 F.2d 230, 235 (3d Cir.1984) (utterance by witness right after pregnant woman's fall on slippery floor admissible); *United States v. Boyd,* 620 F.2d 129, 132 (6th Cir.) (unidentified witnesses' description to police officer of accused "running from apartment to apartment with stolen mail" admissible), *cert. denied,* 449 U.S. 855, 101 S.Ct. 151, 66 L.Ed.2d 69 (1980). We need not decide the question of admissibility, however, because defense counsel's decision to reveal the racial bias of Mr. Gardner, in an effort to show that the accusation of rape was racially motivated, was a legitimate defense tactic.

■ 14. Likewise, we conclude that defense counsel's decision not to compel the personal testimony of Mr. Gardner was a reasonable tactic. Mr. Gardner was the only eyewitness to the alleged rape. Defense counsel reasonably expected his testimony to be unfavorable to appellant. By not calling Mr. Gardner as a witness, defense counsel left Mr. Gardner's blatantly racial remarks undiminished and was able to use that evidence in support of the defense theory of the case.

15. In light of the foregoing, we hold that the court below did not err in rejecting ap-

pellant's assertion that his counsel was ineffective. Our holding as to Issue I renders Issue II moot.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and WISS concur.